UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Charlotte DIVISION
DOCKET NO. 3:20-cv-00333-FDW-DCK

| | |
|---|---|
| Puff Corporation, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Kandypens, Inc., )<br>)<br>Defendant. ) | ORDER |

THIS MATTER is before the Court on Defendant's Amended Motion to Dismiss for Lack of Jurisdiction (Doc. No. 22), Defendant's Renewed Motion to Change Venue (Doc. No. 26), and Defendant's Motion to Dismiss for Failure to State a Claim (Doc. No. 15). Plaintiff has submitted Opposition Motions in response (Doc. Nos. 29, 30, 31), and Defendant replied (Doc. Nos. 36, 37, 38). The matter is now ripe for review. For the reasons stated herein, the Court finds venue transfer appropriate; as such, the Court declines to address Defendant's Motion to Dismiss for Failure to State a Claim. The Court hereby GRANTS Defendant's Motion to Change Venue and ORDERS this case transferred to the Central District of California. The Court DENIES AS MOOT Defendant's Motions to Dismiss for Lack of Jurisdiction and for Failure to State a Claim. (Doc. Nos. 22 and 15).

## I. BACKGROUND

Plaintiff filed the instant suit on June 12, 2020, (Doc. No. 1), and subsequently filed an Amended Complaint on July 23, 2020. (Doc. No. 20). The Amended Complaint alleges Defendant is liable for trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a), and for unfair and deceptive trade practices under N.C. Gen. Stat § 75-1.1 *et seq.* (Doc. No. 20, p. 1). Plaintiff and Defendant are Delaware corporations with their principal places of business located in

California.[1] Id. Plaintiff and Defendant are market competitors—they manufacture, advertise, distribute, and sell electronic vaporizers throughout the United States. Id. Plaintiff's allegations center on what it contends is one of its most successful products—the PEAK vaporizer.[2] Id. at p. 5. Plaintiff alleges the PEAK vaporizer has a "unique, distinctive, and non-functional trade dress" to distinguish itself from market competitors. Id. at p. 6. Plaintiff alleges the PEAK vaporizer has generated more than $50 million in national sales revenue since January 15, 2018 such that "the relevant consuming public has come to recognize the PEAK Trade Dress as identifying [Plaintiff] as the source of the goods. Id. at p. 9.

In 2019, Defendant allegedly began to manufacture, advertise, distribute, and sell an electronic vaporizer called the Oura. Id. at p. 10. Plaintiff contends the Oura "copies features of and is confusingly similar in appearance to [Plaintiff's] PEAK Trade Dress, and therefore is likely to deceive or confuse the purchasing public as to the source or origin of Defendant's products." Id. Plaintiff contends the alleged similarities between the Oura and the PEAK are the result of Defendant's intentional and direct copying of a "number of distinctive, non-functional features from Plaintiff's PEAK trade dress." Id. at p. 11. Plaintiff further contends Defendant's actions with respect to the Oura are "consistent with Defendant's pattern and practice of copying [Plaintiff's] devices." Id. at p. 17. Plaintiff maintains the similarities in the Oura design and the PEAK design "[are] likely to cause retailers and consumers to be confused or deceived or mistakenly believe

---

[1] It is unclear whether Defendant Kandypens has its principal place of business in California. The Amended Complaint asserts Defendant has its principal place of business in Santa Barbera, California. (Doc. No. 20, p. 1). However, Defendant's Memorandum in Support of its Motion to Transfer indicates that its principal place of business is in Scottsdale, Arizona. (Doc. No. 27, p. 2). Elsewhere in the same briefing, Defendant asserts its principal place of business is in Santa Barbera, California. Id. at p. 5. However, it is undisputed that neither party is incorporated or has its principal place of business in North Carolina, and Defendant admits it has "significant business interests concentrated in Southern California." Id. at p. 6.

[2] The PEAK vaporizer is the subject of one issued design patent, U.S. Patent No. D882867, and the subject of one pending design patent application, USPTO Application Number 29669755. (Doc. Nos. 1-2, 1-3). PEAK is also the subject of a utility patent, U.S. Patent No. 10,517,334 (Doc. 20, p. 8).

2

that Defendant's Infringing Product Design is made, sponsored, endorsed, authorized by, or in some other manner affiliated with [Plaintiff]." Id. at p. 16. Plaintiff alleges it is irreparably harmed as a result and accordingly charges Defendant with one violation of trade dress infringement under the Lanham Act and one violation of North Carolina's Unfair Competition and Deceptive Trade Practices Act. Id. at pp. 21, 25. Defendant has moved to transfer venue pursuant to 28 U.S.C. § 1404, or alternatively, to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). The Court first addresses the Motion to Transfer.

## II. VENUE TRANSFER

Venue is appropriate in "a judicial district in which any defendant resides, . . . in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b) (2018). A district court may transfer an action to another district for reasons of convenience upon motions by or the consent of the parties. Id. at § 1404(a)-(b). The question of whether to transfer pursuant to § 1404 is committed to the discretion of the district court, which analyzes a motion to transfer based on an "individualized, case-by-case consideration of convenience and fairness. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988) (citation and quotation omitted). Defendant has advanced two arguments in support of its motion to transfer venue: first, that the "first-filed" rule favors transfer to the Central District of California; and second, the § 1404 factors weigh in favor of transfer.

### a. First-Filed Rule

Federal comity and the first-filed rule provide that "where the same parties have filed similar litigation in separate federal fora . . . the later-filed action should be stayed, transferred, or enjoined." Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003)

3

(citations omitted). Whether the first-filed rule applies is a fact-intensive determination, and courts consider "1) the chronology of the filings, 2) the similarity of the parties involved, and 3) the similarity of the issues at stake." Id. Defendant contends the first-filed rule applies and the case should accordingly be transferred to the Central District of California, where a similar lawsuit is pending. (Doc. No. 27, pp. 10-12). The parties do not dispute that the first two factors of the first-filed rule are applicable here. Compare (Doc. No. 27, p. 11) with (Doc. No. 31, p. 6).

The only question to resolve with respect to the first-filed rule is whether the issues at stake in the two cases are sufficiently similar such that the first-filed rule is applicable. Defendant argues the issues are the same because the "claims involve the exact same products, will involve much of the same evidence, and there is . . . overlap in the issues to be decided." (Doc. No. 27, p. 11). Plaintiff maintains the "the two lawsuits deal with different legal claims and laws, different factual issues, different intellectual property rights, and different issues to be resolved." (Doc. No. 31, p. 6). In California, Kandypens seeks a declaratory judgment that Puffco's patent on its PEAK vaporizer is invalid. See Compl. 2:20-cv-358, ECF No. 1. Puffco counterclaimed, alleging Kandypens' Oura vaporizer infringes on Puffco's utility patent for its PEAK vaporizer. See Answer, 2:20-cv-358, ECF No. 14, p. 6. In the instant suit, Puffco alleges Kandypens is liable for trade dress infringement and for violating North Carolina's Unfair and Deceptive Trade Practices Act. (Doc. No. 20, p. 1). Although the two cases assert different causes of action,[3] both cases seek to determine the legal rights and obligations of the parties with regards to the design and

---

[3] Puffco maintains the instant lawsuit requires "resolution of issues of secondary meaning, consumer confusion, and deceptive trade practices under North Carolina law, none of which exists in the California action." (Doc. No. 31, p. 6). That may be technically true; however, California has a corresponding statute that provides similar protection against unfair or deceptive trade practices. Compare N.C. GEN. STAT. § 75-1.1(a) ("Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.") with CAL. BUS. & PROF. CODE § 17001 ("[T]he purpose of this chapter is to safeguard the public . . . by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented.").

functionality of two products that are market competitors. A primary issue in the California suit—whether Kandypens' Oura vaporizer directly infringes on Puff's PEAK vaporizer utility patent—is nearly identical to the primary issue at stake here—whether Kandypens' Oura vaporizer infringes on the trade dress of Puff's PEAK vaporizer. Indeed, the counterclaim in California and the Complaint here contain nearly identical factual allegations regarding Kandypens' actions and its Oura vaporizer. Compare Answer, 2:20-cv-358, ECF No. 14, pp. 11-14 with (Doc. No. 20, pp. 17-21). Because the case in California was filed first, both parties are identical in both suits, and both cases concern the intellectual property rights of the same products and will require resolution of exceedingly similar factual issues, this Court finds that the first-filed rule applies, and that venue transfer is appropriate.

### b. § 1404 Factors

Although application of the first-filed rule is sufficient to transfer this case to the Central District of California, the Court nonetheless evaluates the propriety of transfer under § 1404. See Great W. Casualty Co. v. Packaging Corp. of Am., 444 F. Supp. 3d 664, 670 (M.D.N.C. 2020) (noting that application of the first-filed rule can be avoided if the § 1404 factors and the "balance of convenience" weigh against applying the rule). In evaluating whether to transfer a case to another jurisdiction under § 1404, a court weighs eleven factors to determine whether Defendants have met their burden to transfer venue. Scenic Mktg.Grp., LLC v. S. Home Med. Equip., Inc., No. 3:11-cv-00551, 2012 WL 113664, at *1 (W.D.N.C. Jan 13, 2012). The eleven factors are:

> (1) the plaintiff's initial choice of forum; (2) the residence of the parties; (3) the relative ease of access of proof; (4) the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; (5) the possibility of a view; (6) the enforceability of a judgment, if obtained; (7) the relative advantages and obstacles to a fair trial; (8) other practical problems that make a trial easy, expeditious, and inexpensive; (9) the administrative difficulties of court congestion; (10) the interest in having localized controversies settled at home [and] the appropriateness in having the trial of a diversity case in a forum that

5

is at home with the state law that must govern the action; and (11), the avoidance
of unnecessary problems with conflict of laws.

Com. Equip. Co., Inc. v. Barclay Furniture Co., 738 F. Supp. 974, 976 (W.D.N.C. 1990). A defendant "carries a particularly heavy burden," as "[a] court should not disturb the plaintiff's choice of forum unless the moving party demonstrates that the balance of convenience to the parties and witnesses and the interests of justice weigh heavily in favor of the transfer to another district." Id. (citations omitted). The mere shifting of inconvenience from one party to another will not satisfy a defendant's burden. Id.; see also Uniprop Manufactured Hous. Cmtys. Income Fund II v. Home Owners Funding Corp., 753 F. Supp. 1315, 1322 (W.D.N.C. 1990) (noting that "if the equities lean but slightly in favor of the movant after all factors are considered," transfer is still not appropriate). Here, the parties dispute each of the eleven factors; as such, the Court analyzes each factor in turn.

### i. Plaintiff's Initial Choice of Forum

"Plaintiff chose North Carolina as its choice of forum, and courts have given great weight to this factor of the analysis." Scenic Mktg. Grp., 2012 WL 113664, at *1; see also Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984); Com. Equip Co., 738 F. Supp. At 976 ("[A] court ordinarily should accord the plaintiff's choice of forum great weight."). When the plaintiff selects a foreign forum and the cause of action bears little relation to that forum, however, such decision is not entitled to the same deference. See JTH Tax, Inc. v. Lee, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007). Even then, in trademark cases, the plaintiff's choice of forum is still entitled to deference when the plaintiff is conducting business in that forum. See Kiss My Face Corp. v. Bunting, No. 02CIV2645, 2003 WL 22244587, at *4 (S.D.N.Y. Sept. 30, 2003) ("Where there is ongoing business activity in the chosen forum, however, plaintiff's choice of forum is given more deference than it would if the connection to this forum were truly *de minimis*.") (quotation omitted); cf.

6

PlayVision Labs, Inc. v. Nintendo of Am., Inc., No. 3:14-CV-312-GCM, 2014 WL 6472848, at *2 (W.D.N.C. Nov. 18, 2014) (ordering transfer of a case when "*nothing* to do with the development or manufacture" of the controversy occurred in North Carolina) (emphasis added).

Here, Plaintiff chose this Court as forum because "Plaintiff conducts substantial business activity in this district" and "North Carolina is the 20th largest market in the United States for [Plaintiff's] products." (Doc. No. 31, p. 10). Additionally, Defendant conducts business in this District and has sold at least 70 units of the allegedly infringing product, the Oura vaporizer, directly to North Carolina consumers. See id. at p. 7; see also (Doc. No. 27, p. 8). Plaintiff's choice of forum is certainly entitled to some weight. However, the weight given to Plaintiff's choice is diminished because its chosen forum is foreign to both parties, and the causes of action asserted here bear at least the same relation to this forum as they do to almost any other forum in the nation. Indeed, 19 other states have a larger market share of Plaintiff's business activity than North Carolina. (Doc. No. 31, p. 10). Moreover, while it is true that Defendant conducts business in this District and in North Carolina more generally, the same can be said of nearly every other state in the nation. By way of example, Defendant's store locator, cited by Plaintiff, shows nearly 600 retailers in the Northeast region alone, which far exceeds the roughly 230 in the Southeast. See Dealers, KANDYPENS, https://www.kandypens.com/stores/ (last visited Nov. 12, 2020). Plaintiff insists that its forum choice weighs against transfer because the Oura has been sold in North Carolina, (Doc. No. 31, p. 11); however, Defendant maintains the 70 Oura units sold here represent only 1.2% of all Oura sales. (Doc. No. 27, p. 8). While the 70 Oura units sold in North Carolina is certainly not *nothing*, this Court is unpersuaded that the cause of action bears more than little relation to North Carolina and this district. Accordingly, the Court assigns some weight to the Plaintiff's chosen forum and finds that this factor weighs only slightly against transfer.

### ii. Residence of the Parties

When a corporation or business entity is subject to personal jurisdiction, it is considered to be a resident of that jurisdiction for venue purposes. 28 U.S.C. § 1391(c)(2). Neither party is incorporated in North Carolina, nor do they have their principal places of business in North Carolina. The parties strongly contest whether this Court has personal jurisdiction over Defendant. See generally (Doc. Nos. 22, 29). Because it is unclear as to whether this Court has personal jurisdiction over Defendant,[4] this factor weighs in favor of transfer to California.

### iii. Relative Ease of Access of Proof

When the moving party fails to provide sufficient evidence that most of the evidence is in another jurisdiction or transporting witnesses to the jurisdiction would be costly, then transfer is not appropriate. SAS Inst., Inc. v. World Programming, Ltd., 468 F. App'x 264, 267 (4th Cir. 2012) (per curiam) (holding that failure to demonstrate all or most of the evidence was in another county and that transporting "myriad" foreign witnesses to North Carolina would be costly meant dismissal on grounds of forum non conveniens was inappropriate). Here, Defendant asserts generally that "none of the evidence is in this district" and will have to be transported if the action remains here. (Doc. No. 27, p. 13). Plaintiff responds by noting that Defendant has not "identified any specific" evidence that would require transport. (Doc. No. 31, p. 12). Plaintiff is correct that Defendant has not met its burden with respect to this factor. Thus, it weighs against transfer.

---

[4] Although the Court declines to analyze the personal jurisdiction issue here, review of the parties' briefing on the issue reveals serious doubt as to whether Defendant's sale of the Oura in North Carolina is sufficient to meet the minimum contacts test. See (Doc. No. 23, p. 9) ("Kandypens has sold 70 units [of the product at issue] to customers with shipping addresses in North Carolina (1.282% of all sales) and just 34 to customers in the Western District of North Carolina (0.623% of all sales).").

### iv. Availability of Compulsory Process for Attendance of Witnesses and the Cost of Obtaining Attendance of Willing Witnesses

Neither party resides in this District. Thus, each party would have to transport its own witnesses to the Western District of North Carolina if trial were held here.[5] However, if the trial is held in California, where Plaintiff resides and Defendant has a "significant business interest," (Doc. No. 27, p. 6), neither party would bear much, if any, expense in transporting witnesses. Thus, this factor weighs slightly in favor of transfer.

### v. The Possibility of a View

A jury would likely need to view both the Oura and PEAK vaporizers to resolve the claims at issue here. Defendant concedes this factor is neutral, (Doc. No. 27, p. 13), but Plaintiff argues it weighs against transfer because both the PEAK and Oura are located in this district. (Doc. No. 31, p. 14). However, the PEAK and Oura are also likely located in any district where both parties conduct business, which appears to be almost any district in the country. See *supra* p. 7. Thus, this factor is neutral.

### vi. The Enforceability of a Potential Judgment

A judgment obtained in either the Western District of North Carolina or in the Central District of California would be enforceable nationwide. This factor is neutral.

### vii. Relative Advantages and Obstacles to a Fair Trial

Defendant concedes this factor weighs against transfer, as there are no arguments that either party would be unable to obtain a fair trial in this district. (Doc. No. 27, p. 14).

---

[5] Plaintiff points to at least one witness who resides in this district, an employee of a retail store whose name is "currently unknown." Id.; see also (Doc. No. 29-2, p. 2). However, a "currently unknown" retail employee could conceivably be found in any district in which both the PEAK and Oura have been sold.

### viii. Other Practical Problems that Make a Trial Easy, Expeditious, and Inexpensive

Defendant points out that the "Central District of California has a six-month head start in the litigation and discovery is already underway in this case" such that the parties will have to undergo many of the same procedural litigation hurdles they have already surpassed in California. (Doc. No. 27, p. 15). In response, Plaintiff provides Federal Court Management Statistics showing that the Central District of California has roughly 525 pending actions per judgeship while the Western District of North Carolina only has 359. (Doc. No. 31, p. 15). Yet, this differential in pending actions translates to roughly 15 days (22.3 months vs. 21.8 months) difference in the median number of months from filing to trial in the two districts. Id. Given that discovery is already underway in the Central District, and the possibility of consolidation due to the similarities between the two cases, this factor weighs in favor of transfer.

### ix. Administrative Difficulties of Court Congestion

In looking at the Federal Court Management Statistics provided by Plaintiff, it appears that the Central District of California is slower in moving through civil litigation than the Western District of North Carolina; however, the time differential amounts to roughly 15 days, or .5 months. Thus, the relative court congestion of each district is not significant. This factor is neutral.

### x. The Interest in Having Localized Controversies Settled at Home

Defendant argues this is not a localized controversy because "Puffco's claims are not specific or unique to North Carolina law, and similar remedies are available under California law." (Doc. No. 27, p. 14). In response, Plaintiff asserts it brought a North Carolina state law claim, which would require a federal court in California to interpret foreign law if transferred. (Doc. No. 31, pp. 15-16). Although the Central District of California having to apply North Carolina law weighs against transfer, Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947), Defendant correctly

10

notes that Plaintiff has not alleged *any* facts indicating this is a localized controversy. As discussed extensively herein, it appears to this Court that Plaintiff's causes of action could be brought in any state where both the PEAK and Oura have been sold. Indeed "every state has a consumer protection law that prohibits deceptive practices." CAROLYN L. CARTER, CONSUMER PROTECTION IN THE STATES: A 50-STATE REPORT ON UNFAIR AND DECEPTIVE ACTS AND PRACTICES STATUTES, 5 (Nat'l Consumer L. Ctr., ed., 2009). Without allegations of North Carolina-specific conduct, the causes of action here could conceivably be "localized" in any district in the country. Thus, the Court finds this factor neutral at best.

### xi. Avoidance of Unnecessary Problems with Conflict of Law

Neither party has indicated this case presents any conflicts of laws issues. Accordingly, this factor is neutral.

### III. CONCLUSION

In conclusion, of the § 1404 factors, three weigh in favor of transfer, three weigh against transfer, and five are neutral. However, the Court finds the first-filed rule applies and that venue transfer is appropriate. The Court hereby ORDERS this matter transferred to the Central District of California. The Court further ORDERS Defendant's Motion to Dismiss for Lack of Jurisdiction, (Doc. No. 22), and Motion to Dismiss for Failure to State a Claim, (Doc. No. 15) are DENIED AS MOOT.

IT IS SO ORDERED.

Signed: November 12, 2020

Frank D. Whitney
United States District Judge